# Weil, Gotshal & Manges LLP

BY ECF

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax
yehudah.buchweitz@weil.com

**Yehudah L. Buchweitz**

July 6, 2018

Honorable John Michael Vazquez
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: *Bergen Rockland Eruv Assoc. et al. v. The Borough of Upper Saddle River*
    2:17-cv-05512-JMV-CLW (D.N.J.)

Dear Judge Vazquez:

On behalf of plaintiffs Bergen Rockland Eruv Association, Inc. ("BREA"), Yisroel Friedman, S. Moshe Pinkasovits, Sarah Berger, Moses Berger, Chaim Breuer, Yosef Rosen, and Tzvi Schonfeld (collectively "Plaintiffs"), the undersigned writes to provide critical background omitted from the Motion for an Order to Show Cause to Enforce the Settlement Agreement (the "OSC"), filed by Defendant, the Borough of Upper Saddle River ("USR"), on July 5, 2018. Further, to avoid wasteful briefing on a matter the parties can resolve during the July 10, 2018 teleconference (*see* ECF No. 60), and because no emergency exists warranting expedited treatment (discussed below), Plaintiffs respectfully request that the Court afford Plaintiffs two (2) weeks from the teleconference to submit opposition papers, if necessary.[1]

As described below, the OSC is premature and unnecessary. Further, there is no emergency for USR and no need for the Court to engage this process on an emergency basis.[2] BREA has diligently worked on the agreed-upon Exhibit A Eruv, and there are only a few additional steps remaining, some of which however are beyond BREA's control.

---

[1] At a minimum, two weeks is appropriate for opposition given that, had USR properly made its motion on regular notice, the hearing would be on August 6, 2018 and further subject to the automatic two-week extension provided in Local Civ. Rule 6.1(b). "The time within which to answer or reply to any pleadings as to which a responsive pleading is permitted may, before the expiration of the original deadline to answer or reply thereto, and with or without notice, be extended once for a period not to exceed 14 days on order granted by the Clerk." *Id.*

[2] The OSC violates Local Civ. Rule 65.1 and the Court should deny it on that basis. USR has not made a "clear and specific showing by affidavit…of good and sufficient reasons why a procedure other than by notice of motion is necessary." Local Civ. Rule 65.1

Honorable John Michael Vazquez  **Weil, Gotshal & Manges LLP**
July 6, 2018
Page 2

This OSC comes shortly after USR sent Plaintiffs a Summer Friday demand letter containing factually and legally incorrect accusations, and that further threatened to proceed immediately to Court with what appears to have been previously prepared and voluminous motion papers. The demand letter did not provide Plaintiffs a reasonable opportunity to respond. Instead, USR threatened to seek Court intervention if BREA did not cease all work on the Eruv by July 9, 2018. In an effort to avoid wasting judicial resources, following receipt of USR's letter Plaintiffs' counsel promptly contacted USR's counsel to discuss USR's allegations. In fact, at the time USR filed its voluminous OSC, Plaintiffs' counsel was in the process of preparing a written response that Plaintiffs intended to transmit to USR's counsel yesterday, well before USR's unilateral July 9, 2018 deadline. As BREA can explain if necessary in a complete filing, BREA has worked (and will continue to work) diligently towards erecting the revised eruv that USR requested as part of the settlement resolving USR's violation of BREA's constitutional rights.[3] Far from BREA breaching this agreement, if anything, USR's constant interference in, and excessive demands regarding, the eruv process are violations of the settlement agreement.

We thank the Court for the opportunity to discuss these matters during the July 10, 2018 teleconference, and, if necessary, we are ready to oppose the OSC in accordance with the less-expedited briefing schedule proposed above. Plaintiffs believe, however, that the parties can resolve this matter if the Court directs the parties to confer in good faith. Below are additional facts and points that Plaintiffs had intended to provide USR yesterday by letter.

### *USR's June 29th Demand Letter*

On June 29, 2018, USR wrote to the undersigned threatening to seek Court intervention to block our clients from performing *any* further work the Eruv set forth in Exhibit A (the "Exhibit A Eruv"), in violation of the Settlement Agreement between the parties. USR's letter made two accusations: (i) BREA missed a purported deadline and not used "best" efforts to complete the Exhibit A Eruv, and (ii) BREA's representatives have not provided requisite "notice" to USR of its repair work, in purported breach of Paragraph 20 of the Settlement Agreement. As discussed below, these two assertions are factually and

---

[3] Regarding these constitutional violations, at the January 9, 2018 hearing on Plaintiffs' motion to dismiss and USR's motion for a preliminary injunction, the Court expressed the preliminary view that USR had "a discriminatory intent in invoking this law (Borough Ordinance 16-15), and that the effect was only to harm plaintiffs." 1/9/18 Hearing Tr. at 11:15-17. The Court recognized as pretext USR's post hoc attempt to justify its ordinance as necessary to prohibit political signage. *See id.* at 13:11-14 ("Importantly, as I noted, they already had ordinances to address the political signage, which they said is the stated reason for the new ordinance. That doesn't make any sense to me."). The Court further noted that USR only began enforcing ordinances purportedly governing utility poles once USR halted eruv construction and the parties exchanged attorney letters with their positions. *See id.* at 18:6-9 ("Of course, if they were always enforcing the ordinance, the Court is at a loss as to why they needed to be reminded, particularly with timing coming so close to the letters that were exchanged with the town council.").

Honorable John Michael Vazquez  **Weil, Gotshal & Manges LLP**
July 6, 2018
Page 3

legally flawed, and certainly inconsistent with the spirit of USR's agreement to "fully cooperate" with BREA's efforts to establish the Eruv (*see* Settlement Agreement at ¶ 9).

### *BREA's Efforts to Create the "Exhibit A" Eruv*

First, throughout negotiation of the Settlement Agreement, USR was always aware of the possibility that the "Exhibit A" Eruv could take longer than sixty days to complete, which is why the parties agreed to compromise language calling for BREA's "best efforts." In fact, Paragraph 13 of the Settlement Agreement expressly contemplated that establishment of the Eruv could take up to six months.[4] As of the date of USR's letter, our clients are less than three months into the extended period provided for in the Settlement Agreement.

Second, USR's insinuation that BREA has made "no effort" to complete the Exhibit A Eruv is demonstrably incorrect. In the Third Circuit, "best efforts" mean a diligent, reasonable, and good faith effort. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233–34 (3d Cir. 2001). Since the effective date of the Settlement Agreement, BREA has undoubtedly met this standard. Rabbi Steinmetz and BREA have (*inter alia*):

- Scoped out the area and conferred with engineers regarding viable locations for new utility poles and fences to develop the new route for the Eruv, as requested by USR;

- Met and conferred with USR officials throughout April and May regarding the style, placement, location, and construction of new utility poles and other structural aspects of the new route for the Exhibit A Eruv;

- Provided USR with pictures on April 19, 2018 of the wires that BREA had proposed to use to construct the new route for the Exhibit A Eruv.

- Obtained a revised insurance policy from MBIA, Inc. on April 19, 2018 in relation to the Exhibit A Eruv, as mandated by USR in the Settlement Agreement;

---

[4] As noted in USR's letter, Paragraph 13 of the Settlement Agreement states in relevant part, "BREA shall use its best efforts to complete the Eruv according to the plan set forth in Exhibit A...within sixty (60) days of the Effective Date of this Agreement." Yet that same paragraph also notes that "[t]he Parties expressly acknowledge, however, should there be a force majeure-like occurrence (including but not limited to acts of G-d or governmental declaration of emergencies) that it may take a longer period of time, but in no event longer than six (6) months from the Effective Date of this Agreement [.]" As discussed below, USR knows that BREA has devoted considerable time to meeting the approval requirements from Verizon in order to implement the Exhibit A Eruv.

Honorable John Michael Vazquez  **Weil, Gotshal & Manges LLP**
July 6, 2018
Page 4

- Submitted pictures to USR on April 30, 2018 of the poles which BREA proposed to use to construct the new route for the Exhibit A Eruv;

- Sought approval from Orange & Rockland Utilities, Inc. on April 16, 2018 for several utility poles for the new route of the Exhibit A Eruv, and received approval on May 14, 2018;

- Submitted a list of all utility poles that would be part of the Exhibit A Eruv to Verizon on May 14, 2018 and subsequently worked with Verizon to satisfy various contractual requirements necessary for completion of the new route of the Exhibit A Eruv, including (*inter alia*) providing yesterday yet additional requested technical information;

- Engaged a third-party fencing contractor, Barcia Bros. Fencing Company to construct additional fences and poles as required for the new route for the Exhibit A Eruv and scheduled times for the contractor to install these fences and poles;

- Diligently provided notices to USR from April to present regarding the need to perform regular inspections and repairs, including (as necessary) every Friday prior to the Sabbath; and

- Met with Theodore Preusch, USR Administrator, on Monday, June 25, 2018, to discuss BREA's efforts to complete the new route for the Exhibit A Eruv.

Further, having submitted all final pole locations, BREA continues to work closely with Verizon to resolve any outstanding requirements. BREA undertook these efforts at the insistence of USR, and only after USR was forced to relent on its threat to seek injunctive relief against Verizon if it even attempted to issue licenses to BREA. USR's suggestion that unforeseen delays, related to BREA's efforts to comply with USR's own requirements, qualify as grounds for an alleged breach of the Settlement Agreement is sadly characteristic of USR's consistently obstructionist attitude towards the Eruv, and its continuing campaign against those who require the Eruv.[5]

### *BREA Has Consistently Provided Requisite Notice to USR*

USR also mischaracterizes Rabbi Steinmetz's repeated efforts to notify USR of planned repair and/or installation work as purported breaches of Paragraph 20 of the Settlement Agreement. But as we have already discussed with USR (and provided examples), Rabbi Steinmetz has repeatedly provided advance notice in writing to Police Chief Rotella, Lieutenant Lally, and the USR Building and Zoning Departments

---

[5] For example, Plaintiffs became aware through a recent OPRA production that USR Police are selectively enforcing a parking ordinance at Lions Park on days of the week *other than* Saturday, which is the Sabbath, *i.e.* the one day observant Jews do not drive to the park. This discriminatory conduct is similar to conduct at issue in the New Jersey Attorney General's pending action against Mahwah.

Honorable John Michael Vazquez  **Weil, Gotshal & Manges LLP**
July 6, 2018
Page 5

of necessary repair work to the lechis. USR has asked for additional information in these notifications, and BREA has already agreed to try to be more specific regarding the location of the pole(s), as reflected in recent notices. At the same time, BREA is not required to describe to USR or get its permission for the specific necessary repairs. And, even though it is not required under the Settlement Agreement, Plaintiffs have agreed to copy Mr. Rosen on future notices as well. Given these efforts to comply with Paragraph 20's notice requirements, it is unfortunate that USR's demand letter and OSC threaten police action to "prohibit *any* work on the eruv," which is all-too-reminiscent of similar threats lodged last July that led to the underlying lawsuit and the Court's resulting preliminary observation that USR's actions violated Plaintiffs' constitutional rights. *See* 1/9/18 Hearing Tr. at 11:15-17. The eruv at issues consists of over 2000 poles running through several towns in New York and New Jersey. No other municipality, including (*inter alia*) those with whom Plaintiffs have settled similar claims, have given Plaintiffs the type of trouble that USR consistently has.

Despite BREA's good faith efforts to work with USR, USR has accused BREA repeatedly and falsely of nonexistent misconduct based on rank speculation or contradictory evidence. Regarding the former, on June 18, 2018, USR's counsel accused BREA of installing white lechis on Sparrowbush Road in response to a resident complaint that USR's counsel was admittedly "unable to confirm." Rosen Dec at Ex. J. As BREA had no knowledge of such work, its counsel sought additional information to follow up. Instead of providing any information, however, USR's counsel ignored this request, and did not revisit this unconfirmed complaint until asserting it as proven fact in his memorandum of law (*see* p. 2, 7-8). In other places, USR's counsel flatly contradicts himself. For example, in his memorandum of law (*see* p. 2), USR's counsel asserts that Plaintiffs have breached the settlement agreement "in the form of hanging fishing line." Yet, in a June 11, 2018 email to USR officials, USR's counsel states that "[t]he Borough has no objection to the fishing line." Rosen Dec. at Ex. I.

In fact, just this past Friday, USR claimed in a hasty follow-up email that representatives from BREA were conducting work on the Eruv without prior notification and plugged tools into a resident's power receptacle without consent. USR repeated this factually incorrect assertion in its OSC. *See* Rosen Dec. at ¶14 and Ex. M. Notably, however, USR's portrayal of that morning's events contradicts the relevant police report.[6] In fact, BREA had notified USR that a third-party fencing contractor would be conducting work on Tuesday, June 26th. However, unbeknownst to BREA, the fencing contractor was unable to do

---

[6] *See id.* at Ex. M (police report noting that BREA's contractor "*asked* to use the electricity for some of his power tools," but acknowledging he was denied access and "continued his work with manual tools"). This flatly contradicts Mr. Rosen's sworn statement that BREA's contractor "trespassed on to the resident's property and plugged equipment into the resident's outdoors outlet." *See* Rosen Dec. at ¶ 14. Moreover, Mr. Rosen's declaration misleadingly suggests that he received an email from Police Chief Rotella relaying the incident regarding unauthorized use of a resident's electricity; however, the attached email from Police Chief Rotella (who was not even at work that day) says no such thing. In fact, the police report makes no mention at all of any "trespassing" or use of a resident's outdoor power outlet.

Honorable John Michael Vazquez
July 6, 2018
Page 6

**Weil, Gotshal & Manges LLP**

the work as scheduled, and returned to complete the work that same Friday, June 29th, without first informing BREA. BREA has instructed its contractors to give BREA advanced notice going forward, so that BREA may in turn notify USR.

Over the past three months, our clients have put forth their best efforts to establish the Exhibit A Eruv, and have complied with the notice requirements of the Settlement Agreement. Emergency Court intervention is not necessary here and the OSC should be denied. It is my sincere hope that the Parties can resolve this misunderstanding amicably, without substantial Court intervention. We look forward to the July 10, 2018 teleconference.

Respectfully submitted,

Robert G. Sugarman
Yehudah L. Buchweitz
David Yolkut
Jessie Mishkin
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Diane P. Sullivan
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Tel: (609) 986-1120

*Counsel for Plaintiffs*